UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| RANAE M. ULRICH, *pro se*, | ) | CASE NO. 1:22-cv-01848 |
| | ) | |
| Plaintiff, | ) | JUDGE DAVID A. RUIZ |
| | ) | |
| v. | ) | |
| | ) | |
| FORD MOTOR COMPANY, *et al.*, | ) | |
| | ) | **ORDER OF DISMISSAL** |
| Defendants. | ) | |

This matter is before the Court on two separate Motions to Dismiss Plaintiff's Amended Complaint, one filed by Defendant Paul Donovan (R. 38) and the other by all other Defendants in this action (R. 37). Defendants' Motions to Dismiss, (R. 37; R. 38), have been fully briefed and are ripe for the Court's review (R. 47; R. 58; R. 60).[1] For the following reasons, both Motions are GRANTED and this action is dismissed for failure to state any actionable claims.

**I. Factual and Procedural Background**

Plaintiff RaNae Ulrich, appearing *pro se*, filed an Amended Complaint that is difficult to comprehend and espouses numerous illogical, incoherent conspiracy theories unrelated to her employment claims. The Court, however, construes the allegations in the light most favorable to

---

[1] During the briefing of the Motions, Plaintiff made a litany of other filings, including multiple motions to strike, (R. 42; R. 44; R. 46), a motion to compel "Civil Gideon" appointment, (R. 43), a motion for deposition, (R. 45), a motion to compel the Ohio Attorney General's intervention, (R. 49), and a motion for discovery, (R. 51). Defendants filed a motion to stay discovery pending the Court's ruling on the Motions to Dismiss. (R. 57). Plaintiff has continued to file motions while Defendants' Motions to Dismiss remained pending, including a motion to compel discovery, a motion to file an amended complaint without the proposed amended pleading, a motion to strike Defendants' response to her motion, and a motion for reconsideration. (R. 62; R. 67; R. 73; R. 76).

Plaintiff and gleans the following relevant allegations.

Plaintiff is a resident of Ohio of German, Italian, and Cherokee Native American descent who worked for Defendant Ford Motor Company (Ford) for more than twenty years. (R. 4, PageID# 46, ¶¶ 18–21). Plaintiff alleges that during her employment, she experienced discrimination because of her sex and race at the hands of the company and several of its employees. (*See, e.g.*, *id.* at PageID# 49–50, ¶¶ 39, 41). She references obtaining a psychiatric living will in 2019 and alleges the hostile work environment culminated in a meeting on March 22, 2021, in which she was involuntarily hospitalized. (*Id.* at PageID# 47-48, 55 ¶¶ 26-27, 31, 70). On that date, following a meeting with Labor Relations and her union in which Plaintiff made multiple incoherent statements, (*Id.* at PageID# 56–57, ¶¶ 70–78), she was sent to the medical department and paramedics were called. (*Id.* at PageID# 58–59, ¶¶ 84–97). Plaintiff then voluntarily, albeit reluctantly, chose to go with the paramedics to Southwest General Hospital, where she was allegedly medically incarcerated. (*Id.* at PageID# 61–62, ¶¶ 103–108). Plaintiff alleges that while on medical leave following this incident, Ford unlawfully terminated her on July 13, 2021. (*Id.* PageID# 68, ¶ 137).

Plaintiff's Amended Complaint attempts to allege claims against Defendant Ford and certain employees, including Defendants John Santana, Ralph Johnson, Paul Donovan, Michael Stallard, James D. Farley, Jr., Jacqueline Wilson, Kelly Bennet, Jeremiah Hastings, and Mark Porterfield (collectively, with Ford, Defendants).[2] Plaintiff asserts the following claims against all Defendants: (i) discrimination on the basis of Plaintiff's race/ethnicity in violation of 42 U.S.C. § 1981, (ii) unlawful retaliation in violation of 42 U.S.C. § 1981, and (iii) deprivation of

---

[2] All Defendants are represented by the same counsel, except for Defendant Donovan who retained separate counsel.

rights in violation of 42 U.S.C. § 1983. (*Id.* at PageID# 76–80, ¶¶ 179–197). Against only Defendant Ford, Plaintiff asserts claims of national origin discrimination and unlawful retaliation in violation of Title VII of the Civil Rights Act of 1964 as well as violations of "international humanitarian law" pursuant to 22 U.S.C. § 8213. (*Id.* at PageID# 74–76, 80–82 ¶¶ 166–178, 198–202). Throughout the Amended Complaint, Plaintiff includes illogical, often incoherent conspiracy theories and references violations of 18 U.S.C. § 1091 and Ohio Revised Code §§ 4731.34 and 4731.41. (*Id.* at PageID# 43, 52 ¶¶ 1, 52).

Defendants moved to dismiss.

## II. Standard of Review

A Rule 12(b)(6) motion to dismiss challenges whether a complaint adequately sets forth a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009) (quoting Fed. R. Civ. P. 8(a)(2)). To get past the pleading stage, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* at 678 (quotation marks omitted). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This "plausibility standard is not akin to a 'probability requirement,'" but it demands "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (quotation marks omitted).

A court resolving a Rule 12(b)(6) motion "must consider the complaint in its entirety." *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007). In doing

3

so, a court must accept as true all the factual allegations contained in the complaint and construe them in the light most favorable to the plaintiff. *See Erickson v. Pardus*, 551 U.S. 89, 93–94 (2007) (per curiam); *accord Streater v. Cox*, 336 F. App'x 470, 474 (6th Cir. 2009). A court, however, need not accept as true conclusions of law, "labels and conclusions," "formulaic recitation[s] of the elements of a cause of action," and "naked assertions devoid of further factual enhancement," though these "can provide the framework of a complaint." *Iqbal*, 556 U.S. at 678–79 (cleaned up). "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief" under governing law. *Id.* at 679.

Although *pro se* complaints are liberally construed and held to "less stringent standards than formal pleadings drafted by lawyers," *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011), "the lenient treatment generally accorded to *pro se* litigants has limits," *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996). *Pro se* plaintiffs must still meet basic pleading requirements, and courts are not required to construct claims for them or conjure facts that were not pleaded. *See Brown v. Matauszak*, 415 F. App'x 608, 613 (6th Cir. 2011) ("[A] court cannot create a claim which [a plaintiff] has not spelled out in his pleading." (second alteration in original) (internal quotation marks omitted)); *Payne v. Sec'y of Treasury*, 73 F. App'x 836, 837 (6th Cir. 2003) (affirming *sua sponte* dismissal and stating that "[n]either this court nor the district court is required to create [plaintiff-appellant's] claim for her"); *Young Bok Song v. Gipson*, 423 F. App'x 506, 510 (6th Cir. 2011). Courts need not "ferret out the strongest cause of action on behalf of *pro se* litigants" because such a duty would "be overly burdensome" and "transform the courts from neutral arbiters of disputes into advocates for a particular party." *Young Bok Song*,

423 F. App'x at 510. "While courts are properly charged with protecting the rights of all who come before [them], that responsibility does not encompass advising litigants as to what legal theories they should pursue." *Id.*

### III. Discussion

Plaintiff does not address Defendants' substantive legal arguments in her response to their Motions to Dismiss, choosing instead to expound upon unrelated topics and unsupported theories. (*See* R. 47). Because Plaintiff failed to address Defendants' arguments, she waived opposition to Defendants' motions. *Johnson v. Apple, Inc.*, No. 3:13cv204, 2014 WL 4076148, at *1 (S.D. Ohio Aug. 14, 2014) ("Based upon [the plaintiff]'s failure to address any of the arguments advanced by [the defendant], it appears that he has waived opposition to [the defendant's] motion [to dismiss].") (citing *Weatherby v. Fed. Express*, 454 F. App'x 480, 490 (6th Cir. 2012)), *report & recommendation adopted*, 2014 WL 7330737 (S.D. Ohio Sept. 8, 2014). Courts' "authority to grant a motion to dismiss because it is unopposed is well established" as failing to respond may be treated "as a confession to" the motion's merit. *Demsey v. R.J. Reynolds Tobacco Co.*, No. 1:04cv1942, 2005 WL 1917934, at *2 (N.D. Ohio Aug. 10, 2005) (citing *Cacevic v. City of Hazel Park*, 226 F.3d 483, 492 (6th Cir. 2000)); *see also Brown v. Panther Premium Logistics, Inc.*, No. 1:17cv1383, 2017 WL 6502822, at *1 (N.D. Ohio Sept. 12, 2017) ("This Court may interpret the absence of a response to a motion to dismiss as a waiver of opposition." (citing *Ray v. United States*, Nos. 1:11cr115, 1:16cv141, 2017 WL 2350095, at *2 (E.D. Tenn. May 30, 2017); *Humphrey v. U.S. Att'y Gen.'s Off.*, 279 Fed.Appx. 328, 331 (6th Cir. 2008))). Although Plaintiff's lack of a meaningful response waives her opposition to Defendants' Motions, the Court nonetheless addresses the merits of Defendants'

5

arguments.

### A. Counts I and II Alleging Violations of Title VII

Counts I and II of the Amended Complaint allege that Defendant Ford violated Title VII, 42 U.S.C. § 2000e-3(a), by discriminating and retaliating against Plaintiff. (R. 4, PageID# 74–79 ¶¶ 166–178).

"Title VII of the Civil Rights Act of 1964 makes it 'an unlawful employment practice for an employer ... to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.'" *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (quoting 42 U.S.C. § 2000e–2(a)(1)). To state a claim for violation of Title VII, Plaintiff must plead sufficient facts to satisfy the plausibility standard. *Walker v. Hennigan*, No. 3:23cv559, 2023 WL 4405288, at *2 (N.D. Ohio July 7, 2023). A complaint need not present "detailed factual allegations," but it must allege sufficient "'factual content' from which a court, informed by its 'judicial experience and common sense,' could 'draw the reasonable inference'" that the defendant discriminated against the plaintiff because of her race, color, sex, or national origin. *Keys v. Humana, Inc.*, 684 F.3d 605, 610 (6th Cir. 2012) (quoting *Iqbal,* 556 U.S. at 678, 679, 129).

Defendants argue that Plaintiff's Amended Complaint fails to meet this standard. (*See* R. 37, PageID# 223). In Count I, Plaintiff claims that she was treated differently, harassed, and subjected to a hostile work environment because of her national origin, which she reports as German, Italian, and Native American. (R. 4, PageID# 74, ¶ 168). However, the Amended Complaint does not allege facts showing that Plaintiff was treated differently from other employees or discriminated against based on her national origin. (*See generally id.*) The closest Plaintiff comes to making such an allegation is when she alleges that another employee who, like

6

Plaintiff, was terminated during medical leave was later reinstated while Plaintiff was not. (*Id*. at PageID# 68, ¶139). Yet Plaintiff does not mention national origin when recounting this incident, let alone allege any facts suggesting that she was treated differently from this other employee based on her national origin. (*See id.*). Because Plaintiff has not alleged facts from which this Court could draw the reasonable inference that Defendants discriminated against her based on her national origin, she does not state a claim for discrimination based on national origin in violation of Title VII. *See Keys*, 684 F.3d at 610. Therefore, Count I is dismissed.

In Count II, Plaintiff alleges that Defendant Ford retaliated against her for making complaints "about race, color, religion, sex, or national origin discrimination" in violation of Title VII. (R. 4, PageID# 75–76, ¶¶ 173–78). To state a claim for retaliation in violation of Title VII, a plaintiff must allege facts showing that "(1) she engaged in activity protected by Title VII," (2) the defendant knew about "this exercise of protected rights," (3) the defendant "thereafter took adverse employment action against the plaintiff," and (4) a causal connection existed "between the protected activity and the adverse employment action." *Sharma v. Ohio State Univ.*, 25 F. App'x 243, 248 (6th Cir. 2001).

Plaintiff's Amended Complaint alleges that Defendant Ford violated the anti-retaliation provisions of Title VII by "placing her involuntarily into a mental institution and escalating their discriminatory treatment against her." (R. 4, PageID# 76, ¶ 176). Considering that Plaintiff is *pro se*, the Court liberally construes the pleading requirements and interprets Plaintiff's allegations of "escalated discriminatory treatment," *id.*, as referring to her subsequent termination. *See Williams*, 631 F.3d at 383 (supporting the liberal construction of *pro se* pleadings). Nevertheless, Plaintiff has not sufficiently alleged facts to plausibly plead that her employment was terminated because she reported harassment and discrimination. Plaintiff's Amended Complaint notes

7

several instances in which Plaintiff reported discrimination and harassment to union officials. (*Id*. at PageID# 47, 61, ¶¶ 24, 45, 47, 60). However, Plaintiff does not allege that her employer or any company decisionmaker involved in terminating her employment was aware of these complaints, as required. *See Sharma*, 25 F. App'x at 248; *cf. Fenton v. HiSAN, Inc.,* 174 F.3d 827, 832 (6th Cir. 1999) (affirming summary judgment where the plaintiff was unable to produce evidence sufficient to establish the individuals taking the adverse action knew of the protected activity).

      Plaintiff also fails to allege facts showing causation. To establish causation when alleging retaliation, a Title VII plaintiff must show that her "protected activity was a but-for cause of the alleged adverse action by the employer." *Univ. of Tex. Sw. Med. Ctr. v. Nassar,* 570 U.S. 338, 363 (2013). Defendant contends, and Plaintiff's Amended Complaint supports, that Plaintiff was terminated when she did not return to work at the end of her approved medical leave—not because she reported discrimination and harassment. (*See* R. 4, PageID# 68, ¶¶ 137, 138; R. 37). Further, the timing of Plaintiff's reports alone cannot indicate a causal connection between Plaintiff reporting discrimination and harassment and her termination. Plaintiff allegedly complained of discrimination between 2015 and 2017, in October 2019, and in February 2021, but she was terminated in July 2021, five months after the most recent complaint and years after earlier complaints. (*Id*. at PageID# 47, 51, 54, 61, ¶¶ 26, 45, 47, 60, 137, 138). Plaintiff alleges no other facts related to causation. (*See generally id.*) Even if the temporal gap between Plaintiff's reports and termination were shorter, such a gap alone cannot "support a causal inference" in these circumstances. *See Kean v. IT-Works, Inc.*, 466 F. App'x 468, 471 (6th Cir. 2012) (noting that although "there may be some circumstances where evidence of temporal proximity alone would be sufficient to support an inference of causation," those circumstances

8

did not exist when there was a two-and-a-half-month gap between a complaint and alleged retaliatory conduct or when there was a one-month gap between a complaint and alleged retaliatory conduct).

Because Plaintiff has not alleged facts showing that Defendant Ford was aware of her complaints before she was terminated or that a causal connection existed between her complaints and her termination, Plaintiff fails to state her claim for retaliation in violation of Title VII. Therefore, Count II is dismissed.

### B. Counts III and IV Alleging Violations of 42 U.S.C. § 1981 against all Defendants

Counts III and IV of the Amended Complaint allege race/ethnicity discrimination and retaliation in violation of 42 U.S.C. § 1981 against all Defendants. (R. 4, PageID# 76–79, ¶¶ 179–191).

#### 1. Count III Fails to State a Claim

That 42 U.S.C. § 1981 extends to discrimination based on ethnicity in addition to discrimination based on race is well established. *See Saint Francis Coll. v. Al-Khazraji*, 481 U.S. 604, 613 (1987). To state a claim for race or ethnicity discrimination in violation of section 1981, a plaintiff must allege facts showing "that, but for race [or ethnicity], [she] would not have suffered the loss of a legally protected right." *Comcast v. Nat'l Ass'n of Afr. Am.-Owned Media*, 589 U.S. 327, 341 (2020).

As discussed above with respect to Count I, Plaintiff has failed to meet the required pleading standard to state a claim for discrimination in violation of Title VII. In *Comcast*, the United States Supreme Court held that the standard for pleading Title VII discrimination claims was less stringent than the standard for pleading section 1981 discrimination claims. *See* 589 U.S. at 336–41. Thus, with respect to Defendant Ford, for the same reasons Plaintiff fails to state

9

a claim for Title VII discrimination, she fails to meet the more stringent standard to state a claim for section 1981 discrimination. Like with her Title VII claim, here, Plaintiff alleges no facts showing that Defendant Ford terminated her because of her race or ethnicity, let alone that she would not have been terminated but for her race or ethnicity. (*See generally* R. 4). Thus, Plaintiff fails to state this claim against Defendant Ford.

Regarding the other Defendants in this case, Plaintiff's claims also fail. Although Plaintiff occasionally alleges that one of the defendants mistreated her, she does not allege facts showing that but for her race or ethnicity, she would not have been treated as such. The Amended Complaint presents nothing more than "unadorned, the-defendant-unlawfully-harmed-me accusation[s]" that fail to plausibly plead a claim. *Iqbal*, 556 U.S. at 678. In reaching this conclusion, the Court has considered Plaintiff's allegations against each Defendant.

Plaintiff's Amended Complaint mentions Defendant Farley only once. In that instance, Plaintiff does not allege any discrimination against Plaintiff and instead describes how Defendant Farley "responded to" Elon Musk. (R. 4, PageID#57, ¶ 76). As such, Plaintiff fails to state a claim for section 1981 discrimination against Defendant Farley.

Although Plaintiff's Amended Complaint mentions Defendant Santana several times, it does not plausibly allege that he discriminated against Plaintiff on the basis of her race or ethnicity in violation of section 1981. The Amended Complaint makes one bald assertion that Santana "subjected Plaintiff to regular and frequent unwarranted criticism and hostility with regard to her race" but provides no further information. (*Id*. at PageID# 49, ¶ 39). This is exactly the kind of "naked assertion[] devoid of further factual enhancement" that courts need not credit. *Iqbal*, 556 U.S. at 678–79 (quoting *Bell Atl. Corp.*, 550 U.S. at 557). Plaintiff also alleges that Defendant Santana unfairly "disciplined" her and attempted to create a hostile work

environment. (R. 4, PageID# 50, 51, 55, ¶¶ 43–46, 66). Nevertheless, Plaintiff again fails to allege that such behavior was in any way related to her race or ethnicity. *Id*. Thus, Plaintiff does not state a claim for section 1981 discrimination against Defendant Santana.

Plaintiff alleges that Defendant Ralph Johnson "subjected Plaintiff to regular and frequent unwarranted criticism and hostility with regard to her race." (R. 4, PageID# 49, ¶ 39). Plaintiff also alleges that Defendant Johnson advised her that she had a target on her back and that she believes he was targeting her "based on her race in an effort to ethnic cleanse" their work department. (*Id*. at PageID# 50, ¶ 41). Again, Plaintiff leaves her allegations at these "naked assertions devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678–79 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). Plaintiff's final allegation related to Defendant Johnson is that he asked her "what are you doing here?" when Plaintiff returned to work in a department from which she had previously been removed. (R. 4, PageID# 54, ¶ 64). Thus, Plaintiff does not allege facts showing that Defendant Johnson's behavior deprived her of a legally protected right and that he would not have done so but for her race or ethnicity. Therefore, she fails to state a claim for section 1981 discrimination against him.

Plaintiff's Amended Complaint mentions Defendant Bridget Johnson only once. (*Id*. at PageID# 53, ¶ 58). Plaintiff alleges that Defendant Bridget Johnson slandered her and sought to harm Plaintiff and destroy her reputation because Plaintiff is not black. *Id*. Again, Plaintiff provides no facts to support this conclusory allegation and thus fails to state a claim. *See Iqbal*, 556 U.S. at 678–79.

Plaintiff's only mention of Defendant Bennet alleges that after reporting racism to Defendant Bennet her response was "What do you think everyone is just supposed to like you?". (R. 4, PageID#54, ¶ 61). There are no further facts alleged against this defendant to support a

plausible claim of discrimination based on ethnicity. Similarly, the only mention of Defendant Stallard is an assertion that he disciplined her for reporting racism. (*Id*. at PageID#54, ¶ 60). Plaintiff makes no further allegations regarding Defendant Stallard. (*See id.*) Thus, Plaintiff's conclusory assertion is not sufficient to state a claim. *See Iqbal*, 556 U.S. at 678–79.

Plaintiff identifies Defendant Hastings as the company doctor at her workplace, but she makes no other mention of him. (R. 4, PageID# 45, ¶ 12). Because Plaintiff alleges no facts related to Defendant Hastings, she fails to state any claims against him.

Plaintiff alleges that Defendant Porterfield formed a plan to harm Plaintiff with Defendant Donovan and that Defendant Porterfield is "obsessed with retaliation" against her. (*Id*. at PageID# 65, ¶ 126). Again, Plaintiff does not allege that Defendant Porterfield's actions were related to her race or ethnicity in anyway, and she leaves her allegations at these conclusory statements. Thus, she fails to state a claim for discrimination in violation of section 1981 against Defendant Porterfield.

Plaintiff alleges that Defendant Donovan was present at the meeting on March 22, 2021; did not believe Plaintiff's statements in that meeting; stated "we want you to go see the medical doctor"; and informed Plaintiff that security was on their way. (*Id*. at PageID# 56, 58, ¶¶ 71, 72, 84, 86). Plaintiff also alleges that Defendant Donovan made a "medical decision" about her and developed a plan to harm her with Defendant Porterfield. (*Id*. at PageID# 58, 65 ¶¶ 89, 126). There are no further factual allegations against Defendant Donovan. Plaintiff does not allege that Defendant Donovan's actions were in any way related to her race or ethnicity. Thus, she fails to state a claim against Defendant Donovan for discrimination in violation of section 1981.

Plaintiff failed to effectuate service on Defendant Wilson, (R. 41), therefore all claims against Defendant Wilson are dismissed, Fed. R. Civ. P. 4(m).

As to all Defendants, Plaintiff fails to state a claim for discrimination in violation of section 1981. Therefore, Count III is dismissed.

### 2. Count IV Fails to State a Claim

"The elements of a retaliation claim under § 1981 are the same as those under Title VII." *Boxill v. O'Grady*, 935 F.3d 510, 520 (6th Cir. 2019). Thus, to state a claim for retaliation in violation of section 1981, a plaintiff must allege facts showing that "(1) she engaged in protected activity; (2) her exercise of that activity was known by the Defendant; (3) the Defendant thereafter took an action that was materially adverse to her; and (4) there was a causal connection between the protected activity and the materially adverse action." *Id.*

Here, Plaintiff alleges that she was retaliated against for reporting and opposing discrimination, (R. 4, PageID# 78, ¶ 188), by being "demoted from the MP&L department" and placed "in the V6 department" and being subjected to escalating discriminatory treatment, (*id.* at PageID# 54, 78, ¶¶ 59, 189). As stated above, the Court liberally construes Plaintiff's *pro se* Amended Complaint and construes Plaintiff's allegations of escalated discriminatory treatment as referring to the events of March 20, 2021, and her subsequent termination. *Id.*; *see Williams*, 631 F.3d at 383 (supporting the liberal construction of *pro se* pleadings).

As to the section 1981 retaliation claims related to Plaintiff's March 20, 2021, hospitalization and her termination, she has not alleged facts showing a causal connection between her reports and the alleged adverse actions. A discussion of Plaintiff's Title VII retaliation claim against Defendant Ford pertaining to Plaintiff's hospitalization and termination can be found above under the discussion of Count II. There are no additional facts alleged against Defendant Ford or any other Defendant in Count IV. Thus, for the same reasons Plaintiff

fails to state a Title VII retaliation claim against Defendant Ford, she fails to state a section 1981 retaliation claim against Defendants.

Plaintiff's retaliation claim related to being demoted from the MP&L department and placed in the V6 department also fails. The referenced department is not mentioned anywhere else in Plaintiff's complaint; however, the Court liberally construes Plaintiff to allege she was placed in the V6 department when she was demoted in September 2020. However, Plaintiff does not allege facts showing that any "protected activity was a but-for cause of the" demotion. *Univ. of Tex. Sw. Med. Ctr.,* 570 U.S. at 363; (R. 4, PageID# 54, 78, ¶¶ 59, 189). She alleges no facts connecting her demotion to her reports. (R. 4, PageID# 54, ¶ 59). Thus, the only facts alleged that could potentially relate to the requisite causal connection are the temporal proximity between her reports and her demotion. Plaintiff made her last report of discrimination in October 2019, nearly a year before her demotion. (*Id*. at PageID# 51, ¶ 47). This allegation of temporal proximity based on an eleven-month gap between her last report and her demotion alone does not suffice to plausibly allege a causal connection. *See Kean*, 466 F. App'x at 471. Thus, because Plaintiff has not alleged facts showing a causal connection between her reports and her demotion, she fails to state a claim for retaliation in violation of section 1981. Because Plaintiff fails to state both her claims for retaliation in violation of section 1981 against all Defendants, Count IV is dismissed.

### C. Count V Alleging Violation of 42 U.S.C. § 1983 against all Defendants

To state a claim for a violation of section 1983, a plaintiff must allege facts showing that a person acting under color of state law deprived her of rights, privileges, or immunities secured by the Constitution or laws of the United States. *See West v. Atkins*, 487 U.S. 42, 48 (1988). Plaintiff's Amended Complaint does not acknowledge the state action requirement under § 1983

and makes no attempt to allege facts showing state action. (*See generally* R. 4). In fact, Plaintiff alleges facts showing that Defendant Ford is a private company and that remaining Defendants, who are Defendant Ford's employees, are private citizens. (*Id.* at PageID# 79–80, ¶¶ 192–197). "Section 1983 does not, as a general rule, prohibit the conduct of private parties acting in their individual capacities." *Lindsey v. Detroit Ent., LLC*, 484 F.3d 824, 827 (6th Cir. 2007). Thus, because Plaintiff does not allege facts showing state action, she fails to state a claim for a violation of section 1983. *Chesler v. Doe*, 532 F. Supp. 1033, 1035 (N.D. Ohio 1982). Accordingly, Count V is dismissed.

### D. Count VI Alleging Violation of 22 U.S.C. § 8213 and Remaining Claims

Plaintiff's Count VI alleges that Defendant Ford's activities related to the COVID-19 pandemic violated "international humanitarian law" pursuant to 22 U.S.C. § 8213. (R. 4, PageID# 80–82, ¶¶ 198–202). In her Amended Complaint Plaintiff also generally alleges that Defendant Ford violated 18 U.S.C. § 1091, a statute criminalizing genocide, as well as Ohio Revised Code §§ 4731.34 and 4731.41, which pertain to the unauthorized practice of medicine and practice of medicine without a license, respectively. None of these claims provide a cause of action for private litigants. 22 U.S.C. § 8213 gives authority only to the President of the United States, and Ohio Revised Code § 4731.34 only defines unauthorized practice of medicine. Further, 18 U.S.C. § 1091 and Ohio Revised Code § 4731.41 are criminal statutes, which cannot be used by a plaintiff to bring a civil action. Accordingly, Plaintiff has failed to state these claims, and they are dismissed.

### E. Additional Pending Motions

Plaintiff has also filed the following motions: multiple motions to strike, (R. 42; R. 44; R. 46), a motion to compel "Civil Gideon" appointment, (R. 43), a motion for deposition, (R. 45), a

motion to compel the Ohio Attorney General's intervention, (R. 49), motions for discovery, (R. 51; R. 62), and a motion for leave to file a second amended complaint, (R. 67), without the proposed amended complaint or any indication regarding the nature of the proposed amendment.

Defendants filed a joint motion to stay discovery pending the Court's ruling on the Motions to Dismiss (R. 57), they also filed responses in opposition to nearly every motion filed by Plaintiff, including her motion to the amend the complaint (R. 71; R. 72). In response, Plaintiff filed a motion to strike Defendants' opposition. (R. 73). Most recently, Plaintiff filed a Motion for reconsideration. (R. 76).

The Court has reviewed these motions. With respect to Plaintiff's motions, the Court finds no merit to them. Furthermore, because the Court finds that Plaintiff has failed to state any plausible claim, grants Defendants' Motions to Dismiss, (R. 37; R. 38), and dismisses the Amended Complaint in its entirety, the Court denies all other pending motions, (R. 42; R. 43; R. 44; R. 45; R. 46; R. 49; R. 51; R. 57; R. 62; R. 67; R. 73; R. 76), as moot.

### IV. Conclusion

For these reasons, Defendants' Motions to Dismiss the Amended Complaint, (R. 37; R. 38), are GRANTED.

IT IS SO ORDERED.

s/ *David A. Ruiz*
David A. Ruiz
United States District Judge

Date: September 27, 2024